IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

WANDA L. LEE,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C10-0069

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

*I. INTRODUCTION*............................................. 2

*II. PROCEDURAL BACKGROUND*............................. 2

*III. PRINCIPLES OF REVIEW*.................................. 3

*IV. FACTS*........................................................ 5
   *A. Lee's Education and Employment Background*............ 5
   *B. Administrative Hearing Testimony*......................... 5
      *1.  Lee's Testimony*........................................ 5
      *2.  Holtkamp's Testimony*................................. 6
      *3.  Vocational Expert's Testimony*........................ 7
   *C. Lee's Medical History*...................................... 8

*V. CONCLUSIONS OF LAW*.................................... 12
   *A. ALJ's Disability Determination*........................... 12
   *B. Objections Raised By Claimant*............................ 14
      *1.  Dr. Eberline's Opinions*............................... 14
      *2.  Credibility Determination*............................ 16
      *3.  Hypothetical Question*................................ 18
   *C. Reversal or Remand*........................................ 19

*VI. CONCLUSION*............................................... 20

*VII. ORDER*...................................................... 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Wanda J. Lee on May 3, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Lee asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Lee requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On April 17, 2007, Lee applied for disability insurance benefits. In her application, Lee alleged an inability to work since January 3, 2007 due to asthma, COPD, and bronchitis. Lee's application was denied on July 6, 2007. On October 31, 2007, her application was denied on reconsideration. On January 2, 2008, Lee requested an administrative hearing before an Administrative Law Judge ("ALJ"). On August 3, 2009, Lee appeared via video conference with her attorney before ALJ Marilyn P. Hamilton for an administrative hearing.[1] Lee, Virginia Holtkamp, Lee's friend, and vocational expert Vanessa May testified at the hearing. In a decision dated September 24, 2009, the ALJ denied Lee's claim. The ALJ determined that Lee was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing other work that exists in significant numbers in the national economy. Lee appealed the ALJ's decision. On March 9, 2010, the Appeals Council denied Lee's request for review. Consequently, the ALJ's September 24, 2009 decision was adopted as the Commissioner's final decision.

On May 3, 2010, Lee filed this action for judicial review. The Commissioner filed an Answer on July 1, 2010. On August 2, 2010, Lee filed a brief arguing that there is not

---

[1] On January 26, 2009, Lee appeared without representation, via video conference, before ALJ Hamilton for an administrative hearing. The ALJ continued hearing to allow Lee to obtain representation and supplement the record in the case. *See* Administrative Record at 28-32.

substantial evidence in the record to support the ALJ's finding that she was not disabled and could perform work that exists in significant numbers in the national economy. On September 29, 2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On October 25, 2010, Lee filed a reply brief. On May 20, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 405(g), the Court has the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.' *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision.

3

*Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Moore*, 572 F.3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005)."); *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.").

## IV. FACTS

### A. Lee's Education and Employment Background

Lee was born in 1966. She is a high school graduate. She also completed one year of college. Lee testified that she has no difficulty reading, writing, speaking, or understanding the English language.

The record contains a detailed earnings report for Lee. The report covers Lee's employment history from 1982 to 2009. Lee first had earnings over $1000.00 in 1984. According to the report, she earned between $1,095.00 (1995) and $27,773.20 (2006). She earned $1,359.37 in 2007, and has no earnings since 2008.

### B. Administrative Hearing Testimony

#### 1. Lee's Testimony

At the administrative hearing, the ALJ asked Lee whether she would be able to perform any of her past work as a data entry worker or an office assistant. Lee responded that she could not perform her past work because she has difficulties with breathing. Specifically, Lee testified that her breathing difficulties "would be the downfall for my jobs. The reason is when I get into a room that has a lot of people that have colognes, perfumes, hairsprays, if there's any strong sense involved that does trigger my asthma, that does trigger my breathing difficulties."[2]

Lee further complained of constant pain in her lower back and hips. When asked if anything aggravates her back and hip pain, Lee replied that "[e]xtended periods of sitting, walking, any type of movement which would include bending over and standing up consistently. Those aggravate the back more."[3] She also testified that because of arthritis in her back, prolonged sitting gives her "grief." Lee also reported shoulder pain which makes it difficult for her to reach overhead.

---

[2] *See* Administrative Record at 49.

[3] *Id.* at 57.

5

The ALJ questioned Lee about her functional capabilities:

> Q: How long are you able to sit at one time?
> A: The most I can sit at one time in a straight back chair is approximately one hour.
> Q: And how long are you able to stand at one time?
> A: I cannot stand for any longer than approximately 15, 20 minutes. My lower back begins to hurt and the outside of my legs go numb.
> Q: And how long are you able to walk at one time?
> A: . . . I would have to say approximately 100 foot.
> Q: And what's the heaviest weight that you lift and/or carry?
> A: Unfortunately if I carry anything I end up throwing my shoulder out. I'm on a -- I was on a weight restriction from the chiropractor.
> Q: So what's the heaviest weight that you lift and/or carry?
> A: Basically myself. If I carry anything in my arms walking I become short of breath and that's when I start hurting the most because of my back, so I try not to carry anything at all.

(Administrative Record at 49-50.)

### 2. *Holtkamp's Testimony*

Virginia Holtkamp ("Holtkamp"), Lee's friend and neighbor, testified at the administrative hearing. The ALJ asked Holtkamp to explain why Lee's impairments keep her from working. Holtkamp explained that:

> The biggest factor is she hasn't been able to take care of herself, let alone wash her hair by herself. Her shoulders are not helping. I've been doing that for the last year-and-a-quarter with washing her hair, doing her laundry. Because she's not able to stand long enough to try to pull the clothes out of the washer, to put them in the dryer. She has been having a real hard time doing that so I've been doing that. She, when we do go shopping she has to use the grocery cart to be able to keep herself up mobile. We do stop a lot to catch her breath. Then with the yard work, or any housecleaning, stuff like that I've been doing a lot of it. Her cooking, she can help but only a few minutes then she has to sit back down. Overall, she's having a really hard time with the mobility, the

6

> breathing. She, She walks between her house and my house on a real hot day it takes her 15, 20 minutes to catch her breath.

(Administrative Record at 62.) Lee's attorney asked Holtkamp whether she thought Lee could perform full-time work. Holtkamp answered "[a]t this point in time I don't think she'd be able to do it."[4]

### 3. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who:

> is limited to sedentary work as defined in Social Security regulations . . . with some additional limitations as follows []. The person can lift up to ten pounds, but only rarely, and can lift up to five pounds frequently. In addition, the person must alternate between sitting and standing every 60 minutes. However, the ability to, to get up and stretch -- I'll define, I'll define that alternate between sitting and standing is the person would need to get up stretch, perhaps walk, but not very far from the work station, and then return to the work station and sit down again. And I will also specify because this is every 60 minutes that , that can include normal breaks and lunch as part of, you know, if a person, say, got a break after two hours that, that could provide for that alternating between sitting and standing. Now this person should never climb ropes, ladders, or scaffolds. Only occasionally climb ramps or stairs. Occasionally balance, stoop, kneel, crouch, and crawl. . . .
>
> [The person] . . . should avoid even moderate exposure to hazards such as moving machinery and unguarded heights, and to fumes[,] odors, dust, gases, [and] poor ventilation. I'll add perfumes, hairspray, et cetera, in that category. Due to pain the person would be able to do only simple, routine, repetitive work. Due to sensitivity to things such as perfume there should be no contact with the public required as part of the job. That would be in person, I should specify, no in person contact with the public. And in person contact with co-

---

[4] *See* Administrative Record at 63.

7

> workers should be limited to a small number, say, four to five
> co-workers in the -- at the workstation. Again, that's because
> of sensitivity to perfumes, et cetera.

(Administrative Record at 71-72.) The vocational expert testified that under such limitations, Lee could perform the following work: (1) document preparer (1,300 positions in Iowa and 120,000 positions in the nation), (2) sorter (1,000 positions in Iowa and 10,000 positions in the nation), and (3) addresser (200 positions in Iowa and 18,000 positions in the nation).

Lee's attorney further questioned the vocational expert regarding Lee's environmental limitations:

> Q: I don't exactly understand the environments that where someone would be a document preparer, sorter, and addresser where they would not come into contact with perfume and hairspray.
> A: I guess that it's a possibility but the limitation I was given was that it would be exposure to four to five people at a time in the vicinity.
> Q: Well, if I were to say that they were not to have any contact with anyone with either perfume or hairspray would that, would that preclude, wouldn't that preclude all work?
> A: I suspect that if you can't ask people not to wear that stuff then, yeah, exposure, you know, anywhere is, is going to be an issue.

(Administrative Record at 74-75.)

### C. Lee's Medical History

On February 22, 2007, Lee was referred to Dr. William Peppo, D.O., for evaluation of a possible asthma diagnosis. Dr. Peppo summarized her symptoms and history as follows:

> [Lee] states that she had episodes of recurrent bronchitis for
> several years, and approximately one year ago, she was treated
> for asthma and she was placed on Singulair and Advair. Over
> the last year she has done fairly well but in January 2007, she
> began having bronchitis symptoms with coughing off and on.
> She has had a loss of energy, fatigue, weakness, and she feels

> her strength has decreased. The Advair and Singulair do not
> appear to have helped her at this time, although, she denies
> any wheezing and the dyspnea sensation has improved.

(Administrative Record at 308.) Lee reported that her asthma was triggered by weather changes, chemicals, fumes, bug sprays, and colognes. She also informed Dr. Peppo that exercise and carrying heavy objects causes her to become short of breath and wheeze. Upon examination, Dr. Peppo found "significant" restrictive lung function suggestive of restrictive lung disease. Dr. Peppo also diagnosed Lee with moderately persistent asthma, with chemical sensitivity, and possible upper airway obstruction. Dr. Peppo recommended further testing of Lee's airway, lung, and asthma problems.

On March 7, 2007, Lee met with Dr. Thomas R. Mirzai, D.O., for an allergy/asthma immunology consultation. Lee reported to Dr. Mirzai that her asthma was exacerbated with exposure to irritant fumes, chemicals, bug sprays, and colognes. Upon examination, Dr. Mirzai diagnosed Lee with moderate persistent allergic asthma and mixed rhinitis with minimal change of season exacerbation. Dr. Mirzai recommended medication and further testing as treatment.

On March 15, 2007, Lee met with Dr. Peppo for a follow-up appointment. Dr. Peppo noted that the results of a complete pulmonary function study performed on Lee revealed evidence of mild restrictive lung function and mild airflow obstruction. Dr. Peppo opined that the restrictive lung function was likely related to her obesity. Dr. Peppo also noted that a CT scan of her chest was negative. Lee reported no pulmonary symptoms, except for wheezing when she overexerts herself. Upon examination, Dr. Peppo diagnosed Lee with mild persistent asthma, including chemical sensitivity. Dr. Peppo also noted that there was no evidence of interstitial lung disease from the CT scan of her chest. Dr. Peppo recommended medication as treatment.

On March 19, 2007, Lee was referred to Dr. Paul H. Caldron, D.O., for a rheumatological evaluation and consultation regarding lower back pain. Lee described her back pain as a sharp, dull pain that gets worse with exertion. She reported being able to stand for 15 minutes before needing to sit down, and being able to walk short distances

before having increased back pain. Upon examination, Dr. Caldron diagnosed myalgias in the setting of nonrestorative sleep and tender points in a classic distribution for fibromyalgia. Dr. Caldron also diagnosed Lee with lower back pain. Dr. Caldron noted that an MRI of her spine was suggestive only of mild changes without lumbar canal stenosis. Dr. Caldron recommended medication and further testing as treatment.

On April 4, 2007, Lee had an allergy follow-up appointment with Dr. Jonathan D. Ruzi, M.D. Lee informed Dr. Ruzi that she suffered from shortness of breath, fatigue, and hypersomnia. Additionally, she complained of difficulty initiating and maintaining sleep. Dr. Ruzi noted that Lee was undergoing an evaluation for fibromyalgia. Upon examination, Dr. Ruzi diagnosed Lee with mild persistent asthma,[5] allergic rhinitis, chemical sensitivity, chronic fatigue, possible fibromyalgia, difficulty initiating and maintaining sleep, and chronic sleepiness. Dr. Ruzi recommended medication and weight loss as treatment.

On April 18, 2007, Lee met with Dr. Jordan S. Weiner, M.D., for evaluation of upper airway obstruction. Upon examination, Dr. Weiner opined that he did "not see any evidence of fixed upper airway obstruction or vocal chord dysfunction[.]"[6] Dr. Weiner diagnosed Lee with severe atrophic rhinitis. Dr. Weiner instructed Lee to irrigate her nasal passages twice daily with warm saline followed by an application of Vaseline as treatment.

On July 5, 2007, Dr. Harry Collier, M.D., reviewed Lee's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Lee. Dr. Collier determined that Lee could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds,

---

[5] Specifically, with regard to Lee's asthma, Dr. Ruzi noted that he had "reviewed her complete pulmonary function studies, which do show a combination of restriction and obstruction. This certainly is evidence of obesity-related restriction." *See* Administrative Record at 316.

[6] *See* Administrative Record at 344.

(3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Collier also determined that Lee could frequently balance and stoop, but only occasionally climb stairs, kneel, crouch, and crawl. Dr. Collier found no manipulative, visual, or communicative limitations. Dr. Collier opined that Lee should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. Dr. Collier further opined that Lee should avoid moderate exposure to hazards such as machinery and heights. Dr. Collier concluded that:

> [Lee] appears to be less than credible as degree of [symptoms] are disproportionate to the expected severity based on overall evidence in file, including diagnostics showing minimal finding[s], normal sleep study, mild lumbar/cervical deg[eneration], [and] normal doppler study.

(Administrative Record at 469.)

On September 4, 2007, Lee met with Dr. Michael J. Fairfax, D.O., for a rheumatology consultation. Dr. Fairfax reviewed Lee's medical history as follows:

> [Lee] is presenting with multiple joint complaints as well as the diagnosis of fibromyalgia. Her joint complaints have been present well over a year and localized primarily to the spine, right knee, and ankles. . . . Her knee has recently started bothering her again. She notes a clicking and a catching. She also experiences discomfort in both ankles that she relates mostly to the edema that she has been experiencing. . . . As for her spine, she does present with x-rays of the cervical spine, which show some disc changes [of the] thoracic spine, which shows spondylosis and a normal lumbar x-ray. . . . Her left shoulder has been bothering her mostly with overhead reaching. It bothers her while she is sleeping. She feels she cannot rest on that side. . . .
>
> [Lee] reports that her pain is worse as the day progresses and seems to be worse with weight bearing. Her main concern at this point is of the low back and right knee. . . . She has recently been diagnosed with thyroid disorder and has severe asthma.

(Administrative Record at 522.) Upon examination, Dr. Fairfax diagnosed Lee with polyarthralgia, without evidence of synovitis more consistent with an orthopedic source, right knee pain, left shoulder tendinitis, thyroid disorder, and obesity. Dr. Fairfax recommended medication and further testing as treatment.

On March 25, 2009, Lee visited Dr. Celia Rojas, M.D., to establish a patient-doctor relationship with a physician in Iowa.[7] Dr. Rojas noted Lee's medical problems, including hypertension, bronchial asthma, multiple allergies, chemical sensitivity, osteoarthritis, fibromyalgia, and restricted lung capacity at 33%. Dr. Rojas treated her with medication.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Lee is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

---

[7] Three months prior to her visit with Dr. Rojas, Lee lived in Arizona. *See* Administrative Record at 603.

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Lee had not engaged in substantial gainful activity since January 3, 2007. At the second step, the ALJ concluded from the medical evidence that Lee had the following severe combination of impairments: mild degenerative disc disease of cervical, thoracic, and lumbar spine, extreme obesity, fibromyalgia, asthma/chronic obstructive lung disease, heel spurs bilaterally, osteoarthritis of the right knee, and left shoulder tendinitis. At the third step, the ALJ found that Lee did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Lee's RFC as follows:

> [Lee] has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she is only able to lift and carry 5 pounds frequently and 10 pounds rarely. She can stand and walk 2 hours total out of a regular 8 hour work day and sit 6 of 8 hours. She must alternate sitting and standing every 60 minutes, which could include normal breaks and lunch. She can never climb ropes, ladders or scaffolds but can climb stairs and ramps occasionally. She can only occasionally balance, stoop, kneel,

>   crouch and crawl. She should not have concentrated exposure
>   to hazards, such as moving machinery and unguarded heights;
>   or to respiratory irritants such as fumes, dust, odors, gases,
>   and poor ventilation. Due to her asthma/allergic sensitivity to
>   odors, especially associated with certain chemicals [such] as
>   perfumes and hairspray, she should not work where she would
>   have 'in person' contact with the public, and should have 'in
>   person' contact at a work station with only a few coworkers,
>   i.e., 4 to 5 coworkers. Due to pain, she is able to do only
>   simple, routine, repetitive work.

(Administrative Record at 13.) Also at the fourth step, the ALJ determined that Lee could not perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Lee could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Lee was not disabled.

### B. Objections Raised By Claimant

Lee argues that the ALJ erred in three respects. First, Lee argues that the ALJ failed to properly consider all the medical evidence submitted in the record, particularly the opinions of Dr. Paul D. Eberline. Second, Lee argues that the ALJ failed to properly evaluate her subjective allegations of disability. Lastly, Lee argues that the ALJ erred by posing an improper hypothetical question to the vocational expert.

#### 1. Dr. Eberline's Opinions

Lee argues that the ALJ failed to consider the opinions of Dr. Paul D. Eberline, D.C., Lee's chiropractor. The record contains 41 treatment notes from Dr. Eberline for Lee, dated June 2008 to May 2009. Lee maintains that the "ALJ's failure to consider Dr. Eberline's records was certainly not harmless error, as Dr. Eberline's records are extensive, detailed, and extremely probative of the intensity and persistence of [] Lee's symptoms."[8] Specifically, Lee points out that Dr. Eberline generally noted on all of his treatment notes that she suffered from back, leg, neck, and shoulder pain. Lee further

---

[8] *See* Lee's Brief (docket number 8) at 17.

points out that Dr. Eberline also indicated that at times, she had difficulty sitting,[9] difficulty breathing,[10] and problems with severe pain, soreness, and fibromyalgia.[11] Lee concludes that "[b]ecause the ALJ completely disregarded Dr. Eberline's records, a remand is required."[12]

Social Security Ruling 06-03p was issued on August 9, 2006 by the Social Security Administration ("SSA"). The purpose of the ruling was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). SSR 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a chiropractor, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

---

[9] *See* Administrative Record at 653-56.

[10] *Id.* at 666, 670, 673.

[11] *Id.* at 681-82, 686.

[12] *See* Lee's Brief (docket number 8) at 18.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

The ALJ's decision lacks any discussion of Dr. Eberline's opinions. Having considered Dr. Eberline's long treatment history with Lee, and Dr. Eberline's opinions regarding Lee's difficulty with sitting, breathing, and pain, the Court finds that Dr. Eberline's opinions are probative in determining whether Lee is disabled, and should have been considered by the ALJ. Accordingly, the Court finds that the ALJ's failure to address or consider Dr. Eberline's opinions requires remand. *See* 20 C.F.R. § 404.1527(d) (an ALJ is required to evaluate every medical opinion he or she receives from a claimant); *see also Sloan*, 499 F.3d at 888 (information from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of an individual's impairments and how it affects the individual's ability to function). Therefore, on remand, the ALJ must fully and fairly develop the record with regard to the opinions of Dr. Eberline. Furthermore, in considering Dr. Eberline's opinions, the ALJ shall provide clear reasons for accepting or rejecting Dr. Eberline's opinions.

### 2. *Credibility Determination*

Lee argues that the ALJ failed to properly evaluate her subjective allegations of disability. Lee maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Lee's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v.*

*Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will

normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ concluded that Lee's "statements about the limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[13] While the ALJ's decision provides examples of inconsistencies between Lee's subjective allegations of disability and the objective medical evidence in the record, the ALJ provides no discussion of the *Polaski* factors. Therefore, the Court finds that the ALJ has failed to consider Lee's subjective allegations on the record as a whole. *See Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). Therefore, because the ALJ's decision lacks full consideration of any of the *Polaski* factors, the Court determines that remand is appropriate for the ALJ to further develop the record with regard to Lee's credibility. Thus, on remand, the ALJ shall set forth in detail her reasons for finding Lee's subjective allegations to be credible or not credible. If on remand, the ALJ finds Lee's testimony not to be credible, the ALJ shall fully explain the reasons for her credibility determination and fully explain the inconsistencies between Lee's subjective allegations and the evidence in the record as a whole.

### 3. *Hypothetical Question*

Lee argues that the ALJ's hypothetical question to the vocational expert did not adequately describe her limitations. Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to

---

[13] *See* Administrative Record at 15.

include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In sections *V.B.1* and *V.B.2* of this decision, the Court remanded this matter for further consideration of the opinions of Dr. Eberline, and for further consideration of Lee's subjective allegations of disability. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Lee's limitations based on the record as a whole, including the opinions of Dr. Eberline. *See Hunt*, 250 F.3d at 625.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*,

833 F.2d at 127. Instead, the ALJ simply failed to properly consider the opinions of Dr. Eberline and make a proper credibility determination in this matter. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ should develop the record fully and fairly with regard to the opinions of Dr. Eberline, provide clear reasons for accepting or rejecting Dr. Eberline's opinions, and support her reasons with evidence from the record. The ALJ must also make a proper credibility determination in accordance with the requirements set forth in *Polaski* and explain her reasons for crediting or discrediting Lee's subjective allegations. Lastly, the ALJ should also reconsider the hypothetical she posed to the vocational expert in accordance with her reconsideration of the other issues on remand.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 19th day of January, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA